UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-40044-GAO

ALFRED R. GENIS,
Plaintiff,

v.

MARTIN CAMPBELL, DAVID CAMPBELL, PURE CRYSTAL, LLC, CAMPBELL TECHNOLOGICAL RESOURCES, INC., and FRAUNHOFER-GESELLSCHAFT,
Defendants.

ORDER ENFORCING SETTLEMENT AGREEMENT
October 7, 2020

O'TOOLE, S.D.J.

On February 26, 2020, this Court, after hearing, granted Plaintiff's Motion to Enforce Settlement Agreement (dkt. nos. 19, 38). The Court found that the parties had agreed to a settlement of their dispute that was the subject of this action, the essential terms of which they recorded in a transcript taken by a court reporter. (See Proposed Order Enforcing Settlement Agreement at 9–14 (dkt. no. 45).)[1] The Court directed the parties to meet and confer in good faith to negotiate a more formal settlement document consistent with the agreed terms recorded in the transcript. The parties subsequently informed the Court they were unable to come to agreement on such a document. The plaintiff submitted a proposed order enforcing the settlement (dkt. no. 45), and defendants moved for an evidentiary hearing concerning the terms of the settlement (dkt. no. 46). After consideration of the parties' submissions, the Court DENIES the defendants' motion and enters this order enforcing the terms agreed to as reflected in the transcript.

---

[1] A copy of the transcript is attached hereto and is cited throughout this Order as (Tr. ___).

It is therefore ORDERED that:

1. Pure Crystal, within a reasonable time not to exceed sixty (60) days from the date of this Order, absent mutual agreement of all parties to extend such date, shall transfer all of its rights, title and interest in all tangible and intangible assets of any kind, including without limitation all Intellectual Property,[2] to Genis or his designee. (Tr. 3:21–4:5, 4:16–24, 6:19–7:5)

2. Kimberlite, within a reasonable time not to exceed sixty (60) days from the date of this Order, absent mutual agreement of all parties to extend such date, shall transfer all of its rights, title and interest in and to all tangible and intangible assets of any kind, including without limitation all Intellectual Property to Genis or his designee. (Tr. 3:21–4:5, 4:16–24, 6:19–7:5)

3. CTR, within a reasonable time not to exceed sixty (60) days from the date of this Order, absent mutual agreement of all parties to extend such date, shall transfer all of its rights, title and interest in the Reactors and related property as defined in paragraph 4, to Genis or his designee. (Tr. 4:16–24, 5:4–18)

4. In the interest of clarity, and without limiting the transfers ordered in paragraphs

---

[2] For purposes of this Order, the term "Intellectual Property" shall be understood as that term is defined in Black's Law Dictionary:
> 1. A category of intangible rights protecting commercially valuable products of the human intellect. The category comprises primarily trademark, copyright, and patent rights, but also includes trade-secret rights, publicity rights, moral rights, and rights against unfair competition. 2. A commercially valuable product of the human intellect, in a concrete or abstract form, such as a copyrightable work, a protectable trademark, a patentable invention, or a trade secret.

Intellectual Property Term, Black's Law Dictionary (11th ed. 2019).

1 through 3 above, the Campbell Parties[3] shall transfer the following assets:

    a. a microwave powered CVD[4] reactor identified by the parties as the "Lambda" reactor (Tr. 4:1–2);

    b. a microwave powered CVD reactor identified by the parties as the "Seki" reactor (Tr. 4:1–2);

    c. a direct current powered plasma reactor built by CVD Corporation, identified by the parties as the "DC" Reactor (the Lamda reactor, Seki Reactor and the DC Reactor, collectively, the "Reactors") (Tr. 4:1–3);

    d. equipment related to the operation of the Reactors (the "Equipment"), owned by any of the Campbell Parties, including but not limited to, the items identified in the transcript at pages 5:4–7:4;

    e. agreements with Fraunhofer and/or affiliates through assignment conditioned on Fraunhofer and/or necessary third parties' consent to such assignment. (Tr. 6:11–18);

    f. all intellectual property associated with the Reactors and Equipment (Tr. 4:4–5; 6:19–7:5); and

    g. the inventory of diamond in Pure Crystal's possession, consisting of approximately 41 carats (Tr. 4:8–13)

5. To the extent the consent of third parties is required to effect a transfer of any of the assets, including by way of example assignment of the software licenses noted above,

---

[3] The term "Campbell Parties" shall be understood to include Martin Campbell, David Campbell, Campbell Technological Resources, Inc. ("CTR"), Pure Crystal LLC, and Kimberlite Applied Sciences LLC. (Tr. 3:2-17)

[4] CVD stands for chemical vapor deposition.

the Campbell Parties shall cooperate and use best efforts to obtain the consent of said third parties. (Tr. 6:11–7:5; 10:16–22)

6. Within a reasonable period not to exceed fourteen (14) days after request by Genis, the Campbell Parties shall provide Genis' designee, Larry Eckert, or if Mr. Eckert is unable or unwilling to do so, such other designee as is acceptable to the Campbell Parties or approved by this Court, access to the premises of CTR in Crestline, Ohio, during normal business hours for the purpose of inspecting, disassembling and removing therefrom the Reactors and Equipment. Genis shall complete the inspection, disassembly and removal of the Reactors and Equipment within six (6) months of the date of this Order. The Campbell Parties shall afford Genis' designee such time as is reasonably necessary to permit the inspection, disassembly and removal of the Reactors and Equipment. Genis shall bear the costs of the inspection, disassembly and removal. (Tr. 9:4–10, 11:11–12:11)

7. Genis, or an entity to be designated by him to receive title to the Reactors, upon acceptance and retrieval of the Reactors shall pay to the Campbell Parties the total sum of $375,000 ("Payment"). (Tr. 7:6–8) The Payment shall be memorialized by a promissory note ("Promissory Note") issued by Genis or a designated entity ("Payor") and shall be subject to the following terms and conditions:

    a. Payment shall be made over a five (5) year period commencing upon the earlier of: (i) the retrieval, reassembly and successful operation of the Reactors by Payor; or (ii) the securing by Payor of significant capital funding sufficient to enable Payor to make Payment according to the Promissory Note, and to render Payor a viable commercial going concern. (Tr. 7:6–8:8)

    b. The Payment shall include interest at the rate of three (3%) per annum from

      the date of this Order. (Tr. 7:6–9)

    c. The Promissory Note shall be secured by a security interest, in favor of its payee, of the Lambda and DC reactors and related Equipment ("Security"). (Tr. 8:18–9:4)

    d. In the event that Payor obtains conventional debt financing to further its commercial interests, to the extent required by a lender, the Campbell Parties shall subordinate its first secured position to that of the financing source. (Tr. 8:18–8:24)

8. In the event Genis fails to complete the disassembly and removal of the Reactors and Equipment within six (6) months of the date of this Order, except as subject to delay caused by force majeure, Genis shall forfeit his right to said Reactors and Equipment and they shall remain the property of the Campbell Parties. (Tr. 9:4–23).

9. The Campbell Parties shall not be liable for the performance of the transferred equipment and reactors, subject to Genis' inspection and confirmation that the equipment and reactors are in working order. (Tr. 16:24–17:5)

10. None of the liabilities of the Campbell Parties shall be assumed by Genis or his Designated Entity. (Tr. 16:10–15).

11. The parties shall execute such documents as are reasonably necessary to vest in Genis or his designated entity title to the assets transferred pursuant to this Order. (Tr. 16:15–18)

12. The Campbell Parties shall not compete with Genis or his Designated Entity, individually or in conjunction with any other person or business entity, in the business of growing single–crystal gem quality diamond suitable for retail sale. (Tr. 9:24–10:9)

13. The Campbell Parties shall indemnify and hold Genis or his Designated Entity harmless from any claims or losses arising from the use by Genis of the licensed or transferred Intellectual Property brought against Genis by Fraunhofer USA, Inc. or Fraunhofer–Gesellschaft, or their respective agents, employees, officers, directors, subsidiaries, affiliates, predecessors, successors or assigns. (Tr. 10:16–22, 13:18–14:5)

14. Genis and his Designated Entity shall indemnify and hold the Campbell Parties harmless from any claims or losses arising from any use of any property belonging to Scio Diamond Technology Corporation, its predecessors, successors or assigns (collectively, "SCIO"). (Tr. 10:22–11:3)

15. The claims alleged in the litigation between the parties, which include actions in Massachusetts and Ohio, are dismissed with prejudice. (Tr. 3:13–20)

16. At the request of Genis, the claims against Fraunhofer–Gesellschaft are dismissed without prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge